IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RADHA GEISMANN, M.D., P.C., )
Individually and as the Representative )
of a Class of Similarly-Situated Persons, )
                                         )
                    Plaintiff,           )
                                         )     CIVIL ACTION
v.                                       )
                                         )     No. 07-2575-KHV
AESTHETICARE, LLC,                       )
                                         )
                    Defendant.           )
_____)

## MEMORANDUM AND ORDER

In Kansas state court, Radha Geismann, M.D., P.C. brought a putative class action against Aestheticare, LLC alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and conversion under Kansas law. On December 10, 2007, Aestheticare removed the action to this Court. On April 9, 2008, the Court remanded the case to state court and ordered Aestheticare to pay plaintiff's attorney fees and costs of defending the removal litigation. See Memorandum And Order (Doc. #44). The Court ordered the parties to consult regarding the fees and costs which plaintiff incurred and to brief the issue if they could not agree on a proper amount. This matter comes before the Court on briefs by both parties regarding the proper award of fees and costs.

Under 28 U.S.C. § 1447(c), the Court may award "just costs and any actual expenses, including attorney fees" where defendant lacks an objectively reasonable basis for removing a case from state court. See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). When attorney fees are awarded under Section 1447(c), the Court must assesses the reasonableness of the fees demanded. See Huffman v. Saul Holdings Ltd. P'ship, 262 F.3d 1128, 1134 (10th Cir. 2001) (with award under Section 1447(c), district court must conduct independent inquiry into reasonableness

of fees demanded). To determine a reasonable attorney fee, the Court arrives at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998). The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The Court has discretion in determining the amount of the fee award. Id.

**I.     Hours Reasonably Spent**

To calculate the lodestar, the Court first considers the hours reflected in the billing statements which plaintiff has submitted in support of its fee award. Plaintiff's attorneys of record are Rex A. Sharp and Barbara C. Frankland of Gunderson Sharp & Walke, L.L.P. Plaintiff has submitted Sharp's declaration, which itemizes his hours and those of Frankland and paralegal Vanessa Noah (13.1 hours for Sharp, 34.8 hours for Frankland and 7.4 hours for Noah). The record also contains the declarations of Brian J. Wanca and Max G. Margulis, attorneys of record in state court who worked on the removed case but did not enter their appearances in federal court. Wanca, of Anderson + Wanca in Rolling Meadows, Illinois, declares that he rendered 15.7 hours of service. Margulis, of the Margulis Law Group in Chesterfield, Missouri, declares that he rendered 14 hours of service. Altogether, plaintiff claims 84 hours of billed time.

        A.     Hours Of Sharp, Frankland and Noah

As noted, Sharp's declaration indicates that he billed 13.1 hours, Frankland billed 34.8 hours and Noah billed 7.4 hours. Aestheticare argues that these hours are unreasonable because they (1) do not reflect proper billing judgment; (2) include work which was not related to the removal litigation; (3) include work on motions which the Court overruled; and (4) have been "block billed."

1. Billing Judgment

Aestheticare argues that plaintiff's attorneys have not exercised billing judgment with regard to their claimed fees. In determining the number of hours reasonably billed, the Court must ensure that plaintiff's attorneys have exercised billing judgment, which consists of winnowing the hours actually expended to the hours reasonably expended. Case, 157 F.3d at 1250. Proper billing judgment requires attorneys to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.

After thoroughly reviewing the billing statement, the Court agrees with Aestheticare that plaintiff's attorneys have billed hours which should have been trimmed in the proper exercise of billing judgment. Specifically, the billing statement includes intra-office communications between Sharp and Frankland for which both attorneys have billed their time.[1] This duplication of effort justifies a reduction in the claimed fees. See Okla. Natural Gas Co. v. Apache Corp., 355 F. Supp.2d 1246, 1262-63 (N.D. Okla. 2004) (good billing judgment requires that only one conference participant bill for conference). The billing statement further reflects duplication of effort with regard to review of court orders (e.g., the initial scheduling order) and other documents (e.g., the removal notice and Aestheticare's response to the motion for leave to file a surreply), as well as tasks such as filing the remand pleadings and dictating and drafting letters to the Court. The Court disregards the hours which plaintiff's attorneys have billed for such duplicative efforts.

2. Work Unrelated To Removal Litigation

Aestheticare argues that the billing statement includes fees for work which plaintiff's

---

[1] For example, on December 18, 2007, Sharp and Frankland each billed for a conference regarding defects in removal and the expiration of the deadline to correct such defects, and on February 20, 2008, they each billed for correspondence regarding misjoinder of parties.

attorneys would have performed regardless of removal. Section 1447(c) authorizes the payment of fees "incurred as a result of removal," which are those that "reflect efforts expended to resist removal." See Huffman, 262 F.3d at 1135.

The Court agrees with Aestheticare that the billing statement includes extraneous activity. Specifically, Frankland has billed for reviewing the answer and investigating Aestheticare's allegation that the action is duplicative of other litigation – an issue which had no bearing on the motion to remand. Her entries also reflect work regarding class certification and discovery matters which she – or another of plaintiff's attorneys – would have performed regardless of removal.[2] Sharp has billed for the receipt and review of a "remand petition in related case" and emails "regarding research on related removal correction," which do not appear pertinent to the removal of this action. He has also billed for correspondence regarding the unanimous consent doctrine, joinder of parties and Aestheticare's claim that plaintiff had sued the wrong party – issues which the parties did not raise in the removal litigation.[3] Like Frankland, Sharp's entries also reflect billing for discovery matters (including review of Aestheticare's disclosures and scheduling of depositions) which would benefit plaintiff in the state court action. Plaintiff does not explain how these entries reflect efforts

---

[2]  This work will benefit plaintiff in state court. For purposes of class certification, the Kansas rule of civil procedure, K.S.A. § 60-223, mirrors Rule 23, Fed. R. Civ. P. Accordingly, Frankland's work in "moving case toward class certification" and preparing certification pleadings would be useful in state court. The parties also agree that discovery obtained in the federal action can be used in state court. Although removal entails unique federal discovery procedures, those procedures are designed to improve the overall efficiency of the discovery process and ultimately impart a cost benefit to plaintiff.

[3]  Generally, the unanimous consent doctrine requires all defendants to join in the notice of removal before it becomes effective. See Harlow Aircraft Mfg., Inc. v. Dayton Mach. Tool Co., No. 04-1377-JTM, 2005 WL 1153600, at *2 (D. Kan. May 16, 2005) (with certain exceptions, notice of removal fails unless all defendants join it). Because this case involves only one defendant, the Court finds no apparent application of the unanimous consent doctrine.

expended to resist removal, and the Court therefore disallows the hours which plaintiff's attorneys have billed for these activities.

###              3.       Motions Which The Court Has Overruled

As evidence of the amount in controversy, in its reply in support of the motion to amend the notice of removal, Aestheticare attached the affidavit of officer Matt Taranto. In response, plaintiff sought leave to file a surreply which challenged the affidavit. Later, after obtaining Aestheticare's discovery responses, plaintiff moved to supplement its arguments against Taranto's affidavit. In its order remanding the case, the Court summarily rejected the affidavit as an improper after-the-fact attempt to cure the defective removal notice. The Court also found that the affidavit did not reflect Taranto's personal knowledge of the stated facts. Because the Court easily rejected the affidavit, it overruled the motions for leave to file a surreply and supplemental brief.

Aestheticare argues that plaintiff is not entitled to attorney fees related to work on the surreply and supplemental brief because the Court overruled the motions for leave to file those documents. The Court disagrees. Taranto's affidavit constituted new material in the reply to which plaintiff was entitled to respond. See Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005) (generally, party should receive opportunity to respond to new evidence and legal argument offered in reply brief). The Court did not overrule the motions because they lacked merit, but because Taranto's affidavit was clearly defective and the Court could reject it without adding extra layers of pleadings into the litigation. Although the Court rejected the affidavit without relying on plaintiff's additional pleadings, the Court will not fault plaintiff for exercising appropriate caution in challenging the affidavit. Accordingly, the Court finds that the hours which plaintiff's attorneys billed in filing the surreply and supplemental brief are reasonable.

####	4.	Block Billing

Aestheticare argues that the billing statement contains entries which mix reasonable and unreasonable activities and that the Court should reject such entries entirely. "Block billing" is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1214-15 (10th Cir. 2000). Although block billing is discouraged, the Tenth Circuit has not adopted a per se rule mandating reduction or denial of a fee request if the party demanding fees has submitted records which reflect block billing. Id. at 1215. In its discretion, the Court may account for the difficulty which block billing causes by applying a general reduction to the requested fees. See Okla. Natural Gas Co., 355 F. Supp.2d at 1264 (citing Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998)).

The Court agrees with Aestheticare that plaintiff's attorneys have block-billed a significant portion of their hours and that allocating a precise measure of time to any one task would be virtually impossible. Because the Tenth Circuit does not mandate that the Court deny all block-billed time, however, the Court declines Aestheticare's invitation to disregard those entries entirely. Instead, the Court will exercise its discretion – taking into account the unreasonableness of certain billing entries described above – to apply a general reduction to the hours claimed. Specifically, the Court disallows 30 per cent of the hours which Sharp and Frankland have billed and 20 per cent of the hours which Noah has billed. In other words, the Court finds that Sharp reasonably billed 9.2 hours, that Frankland reasonably billed 24.2 hours and that Noah reasonably billed 5.9 hours in securing remand of the improperly removed case. These figures properly reflect the complexity of the removal litigation, including the legal issues raised and the number of documents necessary to address

Aestheticare's legal maneuvering.

### B. Hours Of Wanca

Wanca's billing statement reflects 15.7 hours of service. Aestheticare argues that the Court should disallow the hours because Wanca was not admitted to practice in the District of Kansas. To an extent, the Court agrees. Under D. Kan. Rule 83.5.1(c), "[o]nly attorneys [admitted to the bar of the District of Kansas] or duly admitted pro hac vice may appear or practice in this [C]ourt . . . ." In removed cases, D. Kan. Rule 5.1(e) provides that "[a]ttorneys appearing in a state court action [who are] not admitted to practice in this Court shall, within 20 days of such removal . . . , either obtain admission to practice in this Court, if eligible, or associate with an attorney admitted to practice in this Court who shall thereupon move the admission of the attorney not admitted to practice in this Court . . . or move to withdraw . . . ." This rule requires non-admitted attorneys to timely resolve the status of their involvement in the removed case and expresses the Court's desire that it have oversight of out-of-state attorneys who may be bootstrapped into federal court. See D. Kan. Rule 83.5.4(c) (attorney who applies for pro hac vice admission consents to court's exercise of disciplinary jurisdiction over alleged misconduct during case). Here, Wanca did not obtain admission to practice in the District of Kansas and no attorney moved to admit him pro hac vice within 20 days of removal. Any attorney who ignores the local rules, and proceeds to involve himself in a removed action without proper authority, does so at the risk of being denied a fee award. Because Wanca ran afoul of the local rules at the expiration of the 20-day deadline, the Court disregards the hours which he billed after December 30, 2007 (i.e., 20 days after Aestheticare filed the notice of removal).[4]

---

[4] Even if the Court overlooked Wanca's failure to obtain admission to the District of Kansas, his billing statement reflects work almost exclusively dedicated to discovery and class
(continued...)

> This leaves only one billing entry of 3.8 hours, which reads as follows:
>
> Review file, research Supreme Court case law on aggregation of damages for remand motion, scan and e-mail to Max.

To the extent that Wanca has billed for reviewing the case file, this entry does not reflect proper billing judgment. See Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1206 (10th Cir. 1986) (co-counsel time spent gaining familiarity with case not compensable). The Court also finds that time spent scanning and e-mailing research involves expense that was primarily a product of plaintiff's decision to hire a patchwork of attorneys from law firms in several states. This time is not fairly charged to Aestheticare. Because Wanca has block-billed the entry, the Court estimates that a reasonable amount of time which Wanca dedicated to research was 2 hours. This reflects the extent of Wanca's reasonably billed hours.

### C.   Hours Of Margulis

Margulis' billing statement reflects 14 hours of service. Again, Aestheticare argues that the Court should disallow these hours because Margulis was not admitted to practice in the District of Kansas. As with Wanca, the Court will only consider the hours which Margulis billed in the first 20 days after Aestheticare removed the case. Altogether, Margulis billed 7.9 hours between December 10 and December 30, 2007.[5] One billing entry indicates that Margulis spent 5 hours researching and writing the motion to remand. Aestheticare does not object to the substance of this

---

[4](...continued)
certification matters which – as explained above – are not compensable as efforts expended to resist removal. The billing entries also reflect duplicative correspondence which is not compensable.

[5]   Even if the Court overlooked Margulis' failure to obtain admission to the District of Kansas, it would not likely compensate him for the remaining hours which he has billed. The entries reflect duplication of billing regarding correspondence and review of court documents and pleadings – work for which Sharp and Frankland have already billed.

entry, and the Court finds that it reflects a reasonable amount of time for the task. The remainder of Margulis' billing entries reflect duplication of billing for correspondence and document review. As explained above, these hours are subject to reduction as a matter of billing judgment. The Court therefore finds that Margulis has reasonably billed 5 hours of work.

## II.   Reasonable Hourly Rates

As the second component of the lodestar figure, the Court fixes the reasonable hourly rate to which plaintiff's attorneys are entitled. To do so, the Court must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Case, 157 F.3d at 1256. The fee applicant bears the burden "to produce satisfactory evidence that the requested rates are line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Plaintiff proposes an hourly fee of $350 for Sharp, $300 for Frankland and $90 for Noah. Plaintiff further proposes an hourly fee of $390 for Wanca and $350 for Margulis. As evidence of reasonableness, plaintiff relies on Johnson v. Westhoff Sand Co., 281 Kan. 930, 135 P.3d 1127 (2006), in which Sharp litigated a protracted garnishment action that did not involve novel legal issues but required "substantial and significant labor" and "high professional skills and abilities." Id. at 941, 135 P.3d at 1136. In awarding fees, the trial court utilized an hourly rate of $300 per hour for Sharp, $200 per hour for his associate and $90 per hour for his paralegal. Id. at 954, 135 P.3d at 1143. On appeal, the Kansas Supreme Court noted that those hourly rates were "in line with

reasonable figures."[6]  Id. at 954, 135 P.3d at 1143-44.

Aestheticare argues that this case does not demand the rates which plaintiff has proposed because the TCPA claims are not complex.  The parties have cited no law on prevailing market rates in TCPA cases.  Plaintiff concedes that the case presents legal and factual questions which are relatively simple, but argues that the risks inherent in class litigation justify higher hourly rates.  Like Johnson, this case does not involve a novel question of law but nevertheless requires substantial labor and skill.  See Westar Energy, Inc. v. Lake, 493 F. Supp.2d 1126, 1146 (D. Kan. 2007) (specialized skill in complex litigation may justify relatively high hourly rate).  Following Johnson – which is sufficiently analogous to this case – the Court finds that a reasonable hourly rate for Sharp is $300, a reasonable hourly rate for Frankland is $200 and a reasonably hourly rate for Noah is $90.

With regard to the fees of Wanca and Margulis, the Court awards them local rates, rather than the out-of-state rates which they claim.  See Brown v. Unified Sch. Dist. No. 501, 878 F. Supp. 1430, 1433 (D. Kan. 1995) (awarding local rates to out-of-state attorneys where local bar competent to address factual and legal difficulties of case).  Plaintiff argues that Wanca and Margulis are "perhaps the preeminent experts in TCPA class action law," but does not explain why their unique experience was required in the removal litigation, which involved general questions of subject matter jurisdiction, required no special experience with TCPA claims, and was well within the expertise of Sharp and Frankland.  Because the work which Wanca and Margulis performed (i.e. research and writing) is virtually identical to the work which Frankland performed, the Court awards them the same $200 hourly rate.

---

[6] The record also contains evidence that in 2007, on average, Kansas City attorneys billed $292 an hour, with partners averaging $330 per hour and associates averaging $207 per hour. The hourly rates which the Kansas Supreme Court approved in Johnson are similar to these figures.

Based on the hours which plaintiff's attorneys reasonably worked and their reasonable hourly rates, the Court finds that the proper fee award for the improper removal of this case is $9,531.00 (i.e. 9.2 hours at $300 per hour; 31.2 hours at $200 per hour; and 5.9 hours at $90 per hour).[7] The Court also finds that plaintiff is entitled to $34.14 in expenses.[8] In total, plaintiff is entitled to $9,565.14 in fees and expenses which it incurred as a result of improper removal.

**IT IS THEREFORE ORDERED** that no later than **July 7, 2008**, Aestheticare pay plaintiff $9,531.00 in attorney fees and $34.14 in expenses, for a total of $9,565.14.

Dated this 24th day of June, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[7] This lodestar figure is the presumptively reasonable amount of fees. Robinson, 160 F.3d at 1281. Although the lodestar figure is subject to adjustment under certain conditions, see Hensley, 461 U.S. at 434-35, the parties do not argue that the Court should make such an adjustment. The Court finds no reason to depart from the lodestar figure in this case.

[8] Plaintiff requests $84.14 in expenses, which include $34.14 in research, photocopy and postage expenses and $50 for the pro hac vice fee of Margulis. Aestheticare does not object to the research, photocopy and postage fees, but disputes Margulis' pro hac vice fee. As explained above, Aestheticare is responsible only for fees and expenses which reflect efforts expended to resist removal. With regard to the motion to admit Margulis pro hac vice, the record reflects that the removal litigation was complete when plaintiff filed the motion on April 2, 2008. Accordingly, the fee to admit Margulis pro hac vice was not an expense incurred in resisting removal and the Court will not award the expense to plaintiff under Section 1447(c).